# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**RENA MCGARRY**                                                                                 **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 3:05cv792 DPJ-JCS**

**UNIVERSITY OF MISSISSIPPI MEDICAL CENTER**            **DEFENDANT**

## ORDER

This employment discrimination case is before the Court on Defendant University of Mississippi Medical Center's (UMMC) Motion to Dismiss/Motion for Summary Judgment. Plaintiff Rena McGarry has responded in opposition. Having considered the memoranda and submissions of the parties, along with the pertinent authorities, the Court finds that Defendant's Motion to Dismiss/Motion for Summary Judgment should be granted.

**I.**     **Facts/Procedural History**

On June 21, 2004, Plaintiff Rena McGarry was working for UMMC as a staff nurse in the Neurosurgical Intensive Care Unit (NSICU) when one of her patients, Johnny Gilmore, apparently threatened to kill her and accused her of physically assaulting and verbally abusing him. More specifically, Gilmore alleged that McGarry slapped him, cursed at him, went through his personal items, and broke his laptop computer by throwing it down. According to Plaintiff's record evidence, Gilmore's attorney asked Defendant to remove him from Plaintiff's care. Although Plaintiff denied Gilmore's accusations, human resources was notified of the incident, and in accordance with hospital protocol, it suspended McGarry without pay pending completion of an investigation.

After its internal investigation, during which Plaintiff passed a polygraph examination regarding the incident, Barbara Smith Watson, the EEO director for UMMC, determined that

there was insufficient evidence to substantiate Gilmore's allegations against Plaintiff. Accordingly, Plaintiff was reinstated as a staff nurse with full back pay, including any anticipated overtime she would have received during her suspension. Although Defendant reinstated Plaintiff, it decided to transfer her from the NSICU, where Gilmore remained a patient, to 4 South, a neurosurgical floor. Plaintiff's 4 South position had the same job title, benefits, and hours as her NSICU assignment. Plaintiff's salary on 4 South would have been no lower than in NSICU -- Defendant claims she would have received a two dollar per hour raise, Plaintiff contends, however, that she was not advised of this raise. In any event, Plaintiff never reported to work on 4 South; instead, she tendered her resignation on July 7, 2004.

On October 8, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging race, sex, and age discrimination. After receiving a right to sue letter from the EEOC, Plaintiff filed the instant suit charging UMMC with race discrimination, sex discrimination, and retaliation under Title VII of the Civil Rights Act of 1964; age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA) of 1967; hostile work environment; constructive discharge; and state law claims of constructive and wrongful discharge. Plaintiff seeks equitable and monetary relief, including back pay, actual and compensatory damages, attorney's fees, and reinstatement to her former position in the NSICU.

**II.     Analysis**

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party

is entitled to judgment as a matter of law.[1]  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate where the nonmoving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 332 (5th Cir. 2004) (citing *Forsyth v. Bar*, 19 F.3d 1527, 1533 (5th Cir. 1994).

    A.    <u>ADEA and State Law Claims</u>

The Eleventh Amendment to the United States Constitution "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing U.S. CONST. amend. XI) (other omitted citations).    The scope of this immunity "extends to any state agency or entity deemed an alter ego or arm of the state." *Id.* (cited in *Jordan v. Miss. State Dep't of Health*, No. 3:06-cv-233-WHB-LRA, 2007 WL 2344963, at *2 (S.D. Miss. Aug. 16, 2007)).

UMMC has been found to be an arm of the state of Mississippi, entitled to Eleventh Amendment immunity absent waiver or abrogation. *Sullivan v. Univ. of Miss. Med. Ctr.*, 617 F. Supp. 554, 557 (S.D. Miss. 1985) (citations omitted).  Starting with waiver, Mississippi

---

[1] Defendant's motion is styled "Motion to Dismiss/Motion for Summary Judgment"; however, because the parties have presented and relied on materials outside the pleadings, the Court will analyze Defendant's motion as one for summary judgment. FED. R. CIV. P. 12(d); *Pryor v. Wolfe*, 196 F. App'x 260, 262 (5th Cir. 2006); *see also Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 539 (5th Cir. 2003).

expressly preserved its Eleventh Amendment immunity to suit in federal court when it enacted he Mississippi Torts Claim Act.  MISS. CODE ANN. § 11-46-5(4) (2002) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").  So too, Congress has not validly abrogated Eleventh Amendment sovereign immunity with respect to the ADEA or Plaintiff's state law claims.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83–84 (2000) ("[T]he ADEA's purported abrogation of the States' sovereign immunity is . . . invalid."); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) ("The Eleventh Amendment also bars state law claims in federal court." (internal citations omitted)).

Plaintiff attempts to overcome the Eleventh Amendment by first contending that Defendant voluntarily waived its sovereign immunity by accepting federal funds.  42 U.S.C. § 2000d-7(a)(1) provides that

> [a] state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in [f]ederal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other [f]ederal statute prohibiting discrimination by recipients of [f]ederal financial assistance.

This argument was considered and rejected in *Sullivan v. University of Texas Health Science Center at Houston Dental Branch*, wherein the Fifth Circuit explained that

> [t]he question is whether the ADEA is a "federal statue prohibiting discrimination by receipts of federal financial assistance."  Clearly, it is not.  The ADEA prohibits age discrimination by "employers," not by those who receive federal financial assistance.  The fact that many employers receive federal assistance does not mean that the ADEA is a "statute prohibiting discrimination by recipients of [f]ederal financial assistance."  [The state's] general acceptance of federal funding does not waive its Eleventh Amendment immunity from discrimination suits.

4

217 F. App'x 391, 395 (5th Cir. 2007) (unpublished table decision).

Plaintiff next argues that even if the Eleventh Amendment bars her suit against UMMC in federal court for money damages, "she would still have the right to obtain injunctive relief as a result of her unlawful termination." Plaintiff's Memorandum of Authorities in Response to Defendant's Motion to Dismiss/Motion for Summary Judgment ("Plaintiff's Response") at 8. "[W]hile prospective injunctive relief is not prohibited by the Eleventh Amendment, the relief sought must be against a specific named public official and not the state or one of its agencies in their own capacity." *Sullivan*, 617 F. Supp. at 557 (footnotes omitted). "[T]he Supreme Court has held that states and state agencies are . . . immune as entities from suits for prospective injunctive relief." *Clay v. Tex. Women's Univ.*, 728 F.2d 714, 716 (5th Cir. 1984) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Accordingly, Plaintiff's ADEA and state law claims for both monetary and equitable relief are barred by the Eleventh Amendment.

B.   Title VII Claims

1.   *Discrimination*

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1) (2003).

> A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence. Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green* . . . . First, the plaintiff must establish a prima facie case of discrimination. Second, the employer must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the employer is only one of production, not persuasion, involving no credibility assessments.

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal citations and quotations omitted). Third,

> if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citation and internal quotations omitted).

To state a prima facie case of discrimination, Plaintiff must show that she is a member of a protected class; she was qualified for the job; she suffered an adverse employment action; and she was replaced by someone outside her protected group, or a similarly situated individual outside the protected group was treated more favorably. *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007). "In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (citing *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

Plaintiff avers in her Complaint that UMMC violated Title VII by discriminating against her on the basis of race and sex when it (1) suspended her pending the investigation of Gilmore's allegations and (2) transferred her to 4 South. Plaintiff states, without supporting evidence, that

she was replaced by a male. Assuming this were true, it might satisfy her prima facie case on gender. As for the race claim, Plaintiff relies on disparate treatment to establish a prima facie case. She further relies on disparate treatment at the pretext stage of both the race and sex discrimination claims. Because Plaintiff alleges the same disparate treatment to satisfy her prima facie case and as proof of pretext, the Court will examine her proof once, after reviewing Defendant's stated reasons for the employment decisions at issue.

Defendant has stated legitimate, nondiscriminatory reasons for the investigation and the transfer. Defendant's EEO Director, Barbara Smith Watson, and Plaintiff's supervisor, Daniel Stuart, both submitted affidavits stating that the suspension followed hospital protocol. Ex. A, F to Defendant's Memorandum Brief in Support of Its Motion to Dismiss/Motion for Summary Judgment ("Defendant's Memorandum") at ¶ 3. Watson further testified in her deposition that Plaintiff was transferred to separate her from the patient she was accused of physically and verbally abusing. Finally, Watson stated that Defendant selected 4 South as Plaintiff's new assignment based on UMMC's needs and Plaintiff's experience: "4-South would be the best floor for her because the patients on 4-South are neurosurgical just like [Plaintiff] had been caring for in the NSICU." Ex. A to Defendant's Memorandum at ¶ 3. Thus, Defendant has met its burden of producing a legitimate, nondiscriminatory reason for its decision to suspend and transfer Plaintiff. *Russell*, 235 F.3d at 222.

Viewed broadly, it appears that Plaintiff attempts to prove pretext by demonstrating two circumstances of disparate treatment. Neither of these are presented in her legal analysis, but they do appear in the fact section of Plaintiff's Response. "To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical'

circumstances, was treated differently." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)).

Plaintiff first states: "RN's that are African American and male had also engaged in work rule violations that could have subjected them to immediate termination before this incident but management and Defendant UMMC chose not to discipline them . . . ." Plaintiff's Response at 6.  However, Plaintiff's Response fails to identify the other nurses or the alleged violations. Moreover, Plaintiff fails to cite any record evidence in support of this assertion.  The record evidence submitted by Defendant suggests that Plaintiff complained about other nurses engaging in "horseplay," but even assuming that these are the incidents to which Plaintiff was referring, there is no evidence regarding the races of the nurses engaging in "horseplay," and no evidence that their alleged conduct was "nearly identical" to Plaintiff's. *Mayberry*, 55 F.3d at 1090. Unsupported assertions and conjecture are no substitute for summary judgment evidence. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).  This incident fails to demonstrate disparate treatment.

Plaintiff also claims that Gilmore had refused care from other nurses, but they were rotated to other patients and allowed to remain in the NSICU.  While Plaintiff does offer evidence that at least one male nurse remained in the NSICU after conflict with Gilmore, the evidence fails to meet Plaintiff's burden because there is no proof that any other nurse was accused of physically and verbally abusing a patient, invading the patient's privacy, and destroying a computer.  To the contrary, an unrebutted affidavit from Plaintiff's supervisor states that no other nurse had been "accused of assaulting or being abusive with a patient like Rena

8

had." Ex. F to Defendant's Memorandum. Again, the record fails to demonstrate a "nearly identical" circumstance. *Mayberry*, 55 F.3d at 1090.

Finally, Plaintiff makes much of the fact that she was moved despite the results of the investigation. This is not determinative. The question is whether Plaintiff was treated differently under nearly identical circumstances. *Id.* Defendant presented competent and unrebutted record evidence demonstrating that it had a legitimate, nondiscriminatory reason to move Plaintiff from the complaining patient's floor after the litany of charges against her. In fact, Plaintiff claimed that the patient threatened to kill her. Defendant also presented competent, unrebutted evidence that no other nurse had been similarly accused. Accordingly, Plaintiff has not shown that a similarly situated nurse from outside one of the claimed protected classes was treated differently under nearly identical circumstances. *Id*. As such, she fails to state a prima facie case of racial discrimination, and she fails to establish pretext as to her race or sex based discrimination claims.

2. *Retaliation*

Pursuant to Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). Retaliation claims under Title VII are analyzed using the same burden-shifting framework as discrimination claims under Title VII. *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)) ("The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context."). "There are three elements to a prima facie case of retaliation under

Title VII: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

Plaintiff cannot establish a prima facie case of retaliation because she never engaged in any activity protected by Title VII. Although Plaintiff claims that she reported other nurses engaging in "horseplay," Plaintiff never reported any practice made unlawful by Title VII. *See* Ex. G to Defendant's Memorandum at 1–2, 4. Accordingly, the Court finds that Plaintiff has not engaged in a protected activity under Title VII. *See, e.g.*, *Moore v. UPS, Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (unpublished table opinion) (concluding that grievance was not protected activity under Title VII because it "did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII"); *Callahan v. Bancorpsouth Ins. Servs. of Miss., Inc.*, 244 F. Supp. 2d 678, 683 (S.D. Miss. 2002) ("[T]he wide range of protected activity clearly does not include those situations where the opposition relates not to unlawful employment practices but to a personal grievance . . . ." (internal quotations and citation omitted)).

    C.    <u>Hostile Work Environment Claims</u>

In addition to her discrimination and retaliation claims, Plaintiff contends that Defendant subjected her to a hostile or abusive work environment under Title VII.

> To establish a hostile work environment claim, [a plaintiff] must demonstrate that: (1) she is a member of a protected group; (2) she was the victim of uninvited . . . harassment; (3) the harassment was based on [a protected characteristic]; (4) the harassment affected a "term or condition or privilege" of [plaintiff's] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 289 (5th Cir. 2001)).

> In determining whether an environment is hostile or abusive, the court must look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance[;] and whether the complained of conduct undermined the plaintiff's workplace competence.

*Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (internal quotations and citations omitted). For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted). "Title VII . . . is not a general civility code, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Harvill*, 433 F.3d at 434 (internal quotations and citation omitted).

In this case, it appears from Plaintiff's Complaint and her response that the hostile work environment claim relates to (1) the investigation and (2) the decision to transfer her to 4 South. As such, she appears to be asserting her disparate treatment claims under a different label. However, based on this record, changing the description does not change the result.[2]

---

[2]Plaintiff's deposition testimony, as submitted by Defendant, claims that two of her male coworkers were hostile. More specifically, Plaintiff testified that one of the three nurses in the NSICU refused to let her borrow an instrument and called her a "bitch" as she walked away. Ex. G to Defendant's Memorandum at 3. Plaintiff further testified that another one of the three nurses cursed at her behind her back and that all three nurses made it uncomfortable to work in the NSICU, although she would not have left that unit. *Id.* at 4, 8. However, Plaintiff's Response does not mention these allegations, probably because the assertions fall well short of establishing a prima facie case of hostile work environment. *See, e.g.*, *Wilkinson v. Potter*, 236

Neither the investigation nor the transfer establish a hostile work environment under Title VII because Plaintiff has not presented any evidence connecting the alleged harassing activity with her membership in a protected category. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat [ion]* because of sex'" or other protected characteristics. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

Second, the alleged harassment was not sufficiently severe or pervasive to alter the terms or conditions of Plaintiff's employment. The investigation lasted approximately two weeks and, based on Ms. Watson's unrebutted affidavit, followed hospital protocol. Ex. A to Defendant's Memorandum at ¶ 3. At the conclusion of the investigation, Plaintiff was transferred, but she never worked at 4 South, so she was not subjected to those working conditions (even assuming they would have been hostile). This limited conduct is not sufficiently severe or pervasive to survive summary judgment. *See, e.g.*, *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872–74 (5th Cir. 1999) (holding that conduct spanning over a year, including boorish and offensive comments, such as "your elbows are the same color as your nipples," staring, attempting to look down plaintiff's clothing, and touching plaintiff's arm from her shoulder to her wrist, did not qualify as severe or pervasive). The Court finds as a matter of law that Plaintiff has failed to establish the third and fourth prongs of a prima facie case of hostile work environment.

---

F. App'x 892, 893–94 (5th Cir. 2007) (unpublished table decision) (concluding that coworker's conduct, including almost daily periods of staring at plaintiff, unnecessary appearances in plaintiff's office, following plaintiff around the workplace, touching plaintiff on the arm, and shaking a rod in plaintiff's direction for a few seconds, was "not so threatening or humiliating as to create a hostile work environment").

D.     Constructive Discharge Claims

Plaintiff resigned her position at UMMC; her employment was not terminated. "A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation, only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "The Fifth Circuit has set the bar very high for plaintiffs seeking to establish a constructive discharge." *Jackson v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 54 F. App'x 404, 2002 WL 31687699, at *4 (5th Cir. 2002) (unpublished table decision) (citation omitted). In order to maintain a claim for constructive discharge, "'a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" *Brown*, 237 F.3d at 566 (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)). In determining whether this standard has been met, courts have considered the following, non-exclusive list of events:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Id.* (citations omitted). "These events are considered singly or in combination, i.e., a single, greatly significant event may be sufficient to create an intolerable situation, as can several, less egregious events working in tandem." *Jackson*, 2002 WL 31687699, at *5. Finally, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim. Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." *Brown*, 237 F.3d at 566 (citations omitted).

Plaintiff bases her constructive discharge claim on the circumstances surrounding her transfer from the NSICU to 4 South.  Plaintiff asserts that her move to 4 South was not a lateral transfer, but was instead a demotion in duties and responsibilities.  Plaintiff's allegations do not rise to the level required to maintain a constructive discharge claim.

Plaintiff has presented no evidence that Defendant subjected her to a reduction in salary, reassignment to menial or degrading work, reassignment to work under a younger supervisor, or an offer of early retirement.  *Brown*, 237 F.3d at 566.  Instead, Plaintiff would have kept the same title, duties, hours, and at least the same pay.  Ex. A to Defendant's Memorandum at ¶3.  The focus of Plaintiff's Complaint is an alleged reduction in her responsibilities and UMMC's refusal to give her the transfer she desired.  However, "constructive discharge cannot be based upon the employee's subjective preference for one position over another."  *Jett v. Dallas Indep. Sch. Dist.*, 798 F. 2d 748, 755 (5th Cir. 1986) (citation omitted); *see also Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 772 (5th Cir. 2001) (concluding that plaintiff's change of status from a full-time, day shift nurse to a part-time, pool nurse job did not constitute a constructive discharge).

So too, a mere reduction in responsibilities is insufficient.  The Fifth Circuit has repeatedly refused to find constructive discharge in similar cases in which a plaintiff's responsibilities changed.  *See Aryain v. Wal-Mart Stores Tex. LP*, No. 07-20552, 2008 WL 2655792, at *5 (5th Cir. July 8, 2008) (affirming summary judgment and observing that assignment to less desirable work was not sufficiently intolerable); *Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming grant of summary judgment when employee was demoted and given fewer job responsibilities); *Jett*, 798 F.2d at 755 (holding that plaintiff's loss of coaching responsibilities was not sufficiently intolerable).

Plaintiff's claim also fails because she resigned without ever reporting to 4 South, and "[i]n the constructive discharge context, . . . part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Aryain*, 2008 WL 2655792, at *5 (citations omitted) (noting that plaintiff resigned just twenty days after being transferred without complaining about her situation and allowing defendant an opportunity to remedy the problems she identified); *Thompson v. Naphcare, Inc.*, 117 F. App'x 317, 325 (5th Cir. 2004) (unpublished table decision) (stating that "an employee who resigns without affording the employer a reasonable opportunity to address her concerns has not been constructively discharged").

Finally, the "humiliation" Plaintiff alleges is not significant enough to support a constructive discharge claim. *Jett*, 798 F.2d at 755 (determining that humiliation and embarrassment plaintiff suffered in being transferred from his position as athletic director/head football coach to a history teacher/freshman football and track coach was insufficient for constructive termination claim); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004) (concluding that embarrassment plaintiff felt regarding a sarcastic comment made by a coworker concerning management's failure to inform her about a late-notice meeting was not the type of badgering or harassment designed to encourage an employee's resignation). Considering the summary judgment evidence in the light most favorable to Plaintiff, the Court finds that a reasonable employee in Plaintiff's position would not have felt compelled to resign; consequently, Plaintiff's constructive discharge claims should be dismissed.

**III.     Conclusion**

The Court has considered and rejected the remaining arguments raised in Plaintiff's submissions.  Accordingly, for the reasons stated herein, the Court grants Defendant's Motion to Dismiss/Motion for Summary Judgment.  Plaintiff's ADEA and state law claims are dismissed without prejudice.  The remaining claims are dismissed with prejudice.  A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 12th day of August, 2008.

                s/ *Daniel P. Jordan III*
                UNITED STATES DISTRICT JUDGE